# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| ERSTE ASSET MANAGEMENT GMBH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2023-1191-LWW |
| | ) | |
| BERNARDO HEES, ALEXANDRE BEHRING, JORGE PAULO LEMANN, MARCEL HERRMANN TELLES, PAULO BASILIO, DAVID KNOPF, EDUARDO PELLEISSONE, 3G CAPITAL, INC., 3G CAPITAL LTD., 3G GLOBAL FOOD HOLDINGS, L.P., 3G GLOBAL FOOD HOLDINGS GP LP, 3G CAPITAL PARTNERS II L.P., 3G CAPITAL PARTNERS LTD., HK3 18 LP, JOHN CAHILL, GEORGE ZOGHBI, RASHIDA LA LANDE, and JOAO M. CASTRO-NEVES, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| THE KRAFT HEINZ COMPANY, a Delaware Corporation, | ) ) | |
| | ) | |
| Nominal Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: May 23, 2024
Date Decided: August 8, 2024

Joel Friedlander, Jeffrey M. Gorris & Christopher M. Foulds, FRIEDLANDER & GORRIS, P.A., Wilmington, Delaware; Lawrence P. Eagel, Melissa Fortunato, Marion C. Passmore & Brandon Walker, BRAGAR EAGEL & SQUIRE, P.C., New York, New York; *Counsel for Plaintiff Erste Asset Management GmbH*

Matthew D. Stachel, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Wilmington, Delaware; Daniel J. Kramer, Andrew J. Ehrlich & Robert N. Kravitz, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, New York, New York; *Counsel for Nominal Defendant The Kraft Heinz Company and the Individual Defendants*

Michael A. Pittenger, Jacqueline A. Rogers, Caneel Radinson-Blasucci & Camilia R. Katkocin, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Sandra C. Goldstein, Stefan Atkinson & Kevin M. Neylan, Jr., KIRKLAND & ELLIS LLP, New York, New York; *Counsel for the 3G Defendants*

**WILL, Vice Chancellor**

In December 2021, this court resolved derivative breach of fiduciary duty claims brought by Erste Asset Management GmbH on behalf of The Kraft Heinz Company. The claims concerned a sale of Kraft Heinz stock by investor 3G Capital, Inc. The suit was dismissed with prejudice for failure to adequately plead demand futility. The Delaware Supreme Court summarily affirmed the dismissal.

Afterwards, Erste made a litigation demand on the Kraft Heinz board. An investigation ensued and the demand was rejected. Other plaintiffs who likewise made demands filed wrongful refusal actions in this court. Erste opted for a different tactic: it asked to reopen its dismissed demand futility suit.

Erste insists that this unusual relief is warranted due to newly discovered evidence. Its primary theory is that one of the Kraft Heinz directors deemed to be independent had received stock options for undisclosed consulting services. But reasonable diligence on Erste's part—either through its books and records demand or a thorough review of Kraft Heinz's public filings—would have uncovered this information during the prior lawsuit. In fact, Erste raised the director's options in its appeal to the Supreme Court.

Erste also seeks to reopen the prior action due to fraud on the court. The purported fraud, however, concerns public filings Kraft Heinz made outside the litigation context. Erste raises no conduct affecting the integrity of the judicial process that could support the relief it seeks.

1

Finally, Erste advances a new claim that several directors breached their fiduciary duties by failing to correct compensation-related disclosures in Kraft Heinz's proxy statements. Erste says that the disclosures harmed it because it incurred litigation costs in the prior suit. This creative attempt to recover attorneys' fees falls short of pleading the elements of Erste's claim.

Erste may disagree with this court's dismissal of its derivative suit. But the sort of rare circumstances that might merit revisiting it are absent. Erste must live with the outcome of that case and the consequences of its strategic choices.

## I. BACKGROUND

The following facts are drawn from the Verified Stockholder Complaint for Relief from Judgment and Damages (the "Complaint") and documents it incorporates by reference.[1] This includes documents that were produced in response to a books and records demand.[2] The background also addresses a prior action captioned *In re Kraft Heinz Company Derivative Litigation*, C.A. No. 2019-0587-LWW (the "Prior Action").

---

[1] Verified S'holder Compl. for Relief from J. and Damages (Dkt. 1) ("Compl."); *see In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170-71 (Del. 2006); *Allen v. Encore Energy P'r*s, 72 A.3d 93, 96 n.2 (Del. 2013).

[2] Compl., Preamble (acknowledging that books and records produced "are expressly incorporated by reference into th[e] Complaint"); *see also Reiter ex rel. Cap. One Fin. Corp. v. Fairbank*, 2016 WL 6081823, at *2, 5-6, 9 (Del. Ch. Oct. 18, 2016) (considering documents incorporated by reference under agreements governing stockholder inspection demands).

2

## A. Kraft Heinz and its Board

The Kraft Heinz Company, a Delaware corporation, is one of the world's largest food and beverage companies.[3] It became a standalone public company in 2015 after the merger of Kraft Food Groups, Inc. and H.J. Heinz Holding Corporation.[4] 3G Capital, Inc., a global investment firm, became a significant Kraft Heinz minority stockholder.[5] Kraft Heinz's top officials were affiliated with 3G or 3G portfolio companies.[6]

Kraft Heinz's post-merger Board of Directors had eleven members.[7] As of June 2019, three 3G principals—Jorge Paulo Lemann, Alexandre Behring, and Joao Castro-Neves—were on the Board.[8] A fourth director, Alexandre Van Damme, was a longtime business partner of 3G.[9] Two other directors—John Cahill and George Zoghbi—were current or former company consultants.[10] The Board determined in

---

[3] Compl. ¶ 68.

[4] *Id.* ¶¶ 68, 82-83.

[5] *Id.* ¶ 31.

[6] *Id.* ¶¶ 43-44, 77, 84, 245.

[7] *Id.* ¶ 3.

[8] *Id.*

[9] *Id.*

[10] *Id.*

2019 that Cahill and Zoghbi were not independent due to their consulting arrangements.[11]

## B. Cahill's Compensation

Cahill became the Chairman and Chief Executive Officer of Kraft Foods in December 2014.[12] After the merger in July 2015, he became a director of Kraft Heinz and vice chairman of the Board.[13] At the same time, he and Kraft Heinz agreed to a two-year consulting agreement dated July 9, 2015.[14] He was paid $4 million per year to provide consulting services to Kraft Heinz's Chief Executive Officer Bernardo Hees and Chairman Behring—both 3G partners.[15]

After the initial consulting agreement expired, Cahill and Kraft Heinz entered into a new consulting agreement effective November 1, 2017.[16] Cahill's consulting responsibilities were reduced, and his consulting compensation was lowered to $500,000 per year for continuing to devote time to Kraft Heinz beyond his

---

[11] *Id.* ¶¶ 3, 256, 280.

[12] *Id.* ¶ 49.

[13] *Id.*

[14] *Id.* ¶ 51.

[15] *Id.* Cahill received $2 million in 2015, $4 million in 2016, and an undisclosed amount for part of 2017. *Id.*

[16] *Id.* ¶ 52.

responsibilities as a director.[17] Cahill's consulting compensation was in addition to his annual director compensation of approximately $255,000.[18]

In June 2019, Cahill emailed Behring and director Gregory Abel to ask that they "consider a change to [his] financial arrangement with Kraft Heinz."[19] He wrote:

> The bulk of my financial tie[s] to the Company is in the form of options, and all my options are underwater. This is completely appropriate given our results and the losses shareholders have endured. At the same time, I am mindful that I am deemed to be a non-independent Director because of recurring annual consulting payments of $500,000. This is probably not hea[l]thy for the long term.
>
> To address both issues, I recommend the Company suspend consulting payments to me (benefitting the ongoing P&L). In lieu, the Company would provide me a one-time grant of 500,000 options vesting ratably over three years. This would get me on the road to independent status.[20]

The Compensation Committee of the Board met on June 20, 2019. One of the matters addressed was Cahill's consulting arrangement. A deck presented at the meeting said:

---

[17] *Id.*; *see* Transmittal Aff. of Matthew D. Stachel in Supp. of the Opening Br. in Supp. of Defs.' Mots. to Dismiss the Verified S'holder Compl. (Dkt. 13) ("Stachel Aff.") Ex. 2 ¶¶ 1, 3.

[18] Compl. ¶ 53. Cahill's annual director compensation had a disclosed value of $255,000 in 2016, $255,000 in 2017, $235,000 in 2018, and $246,000 in 2019. *Id.* Approximately half of the value in those years took the form of deferred stock awards that were underwater by the end of May 2019. *Id.* ¶¶ 53-54.

[19] Compl. Ex. A.

[20] *Id.*

5

- "[Cahill] [c]urrently receives an annual gross compensation of USD $500k as an advisor."

- "We are proposing no cash compensation effective July 2019 and [a] one time grant of #500,000 stock options."

- "This creates a path for Cahill becoming an independent board member in three years."[21]

The presentation noted that Cahill's "stock options [we]re expected to be issued the later of the end of the blackout period or August 15 based on the closing price for [Kraft Heinz] stock on that date."[22] Minutes of the meeting reported that the Compensation Committee "discussed proposed changes to Mr. Cahill's compensation arrangement," and approved them.[23]

## C. Zoghbi's Compensation

Zoghbi was Kraft Food's Chief Operating Officer before the merger with Heinz.[24] Post-closing, Zoghbi became the Chief Operating Officer of Kraft Heinz's U.S. Commercial Business and served in that role until October 2017.[25] He received $12 million in compensation in 2016 and over $17 million in 2017.[26]

---

[21] Compl. Ex. B.

[22] *Id.*

[23] Compl. Ex. C.

[24] Compl. ¶ 59.

[25] *Id.* ¶ 61.

[26] *Id.*

In October 2017, Zoghbi became a Special Advisor to Kraft Heinz. He was paid an annual base salary of $850,000.[27] He received no additional compensation upon joining the Board in April 2018.[28]

At the June 20, 2019 Compensation Committee meeting, the attendees discussed changes to Zoghbi's arrangement. Presentation materials propose "an annual gross cash compensation of USD $400k effective July 2019 and [a] one time grant of #200,000 stock options."[29] Like Cahill, Zoghbi's "stock options [we]re expected to be issued the later of the end of the blackout period or August 15 based on the closing price for [Kraft Heinz] stock on that date."[30] The Compensation Committee discussed and approved the proposed changes.[31]

In September 2019, Zoghbi agreed to a new arrangement in which his Special Advisor salary was reduced to $100,000 (effective July 1, 2019) and he became eligible for a stock option award of 200,000 shares no sooner than August 15, 2019.[32]

---

[27] *Id.* ¶¶ 58, 62.

[28] *Id.*

[29] Compl. Ex. B.

[30] *Id.*

[31] Compl. Ex. C.

[32] Stachel Aff. Ex. 6 at 1.

## D.     The Disclosures

On August 2, 2019, Kraft Heinz filed its 2019 proxy statement with the Securities and Exchange Commission.[33] The filing came after the Compensation Committee approved terminating Cahill's 2017 consulting agreement and reducing Zoghbi's compensation, but before their stock options were issued. Cahill's consulting arrangement was described:

> On November 2, 2017, we entered into a consulting agreement with Mr. Cahill pursuant to which he provided advisory and consulting services to us related to then-current and historical finances, relationships with licensors, customers and vendors, employee matters, product development, marketing and distribution, government affairs and strategic opportunities. Mr. Cahill provided advisory and consulting services to Kraft Heinz related to then-current and historical finances, relationships with licensors, customers, and vendors, employee matters, product development, marketing and distribution, government affairs, and strategic opportunities. Such services were provided pursuant to a consulting agreement entered into between Mr. Cahill and the Company in November 2017. Mr. Cahill's advisory and consulting arrangement terminated on July 1, 2019. Payments to Mr. Cahill under the consulting agreement are disclosed in the "All Other Compensation" column of 2018 Non-Employee Director Compensation Table below. Previously, Mr. Cahill had provided similar services under a consulting agreement entered into following the 2015 Merger, which had expired in July 2017.[34]

Zoghbi's arrangement was also described:

> For as long as Mr. Zoghbi continues to serve as a Special Advisor at Kraft Heinz, it is anticipated that he will not receive compensation for

---

[33] Transmittal Aff. of Joel Friedlander, Esquire in Supp. of Pl. Erste Asset Mgmt. GmbH's Answering Br. in Opp'n to Defs.' Mots. to Dismiss the Verified S'holder Compl. (Dkt. 17) ("Friedlander Aff.") Ex. E; *see also* Stachel Aff. Ex. 3.

[34] Friedlander Aff. Ex. E at 16, 35 n.4; *see* Compl. ¶ 256.

his services as a director. Effective July 1, 2019, Mr. Zoghbi's base salary was reduced to $400,000.[35]

Both Cahill and Zoghbi's stock options were issued on August 16, 2019.[36] Four days later, the grants were disclosed in Form 4 filings with the SEC.[37] The Form 4 regarding Cahill states that his stock options "cliff-vest on August 16, 2022, subject to the terms and conditions of the stock option award agreement."[38] The Form 4 about Zoghbi's options included the same information.[39]

Kraft Heinz's 2020 proxy statement was filed with the SEC on March 27, 2020.[40] It disclosed that Cahill received $250,000 in 2019 for serving as a consultant under a 2017 "advisory and consulting arrangement terminated on July 1, 2019."[41] It further stated that Cahill received a "one-time grant of 500,000 stock options" "[i]n connection with the termination of his consulting agreement."[42] Cahill's consulting services were described as "distinct and separate from his duties as a

---

[35] Friedlander Aff. Ex. E at 16. The Company also filed a September 2019 offer letter outlining the changes to Zoghbi's compensation as an exhibit to its October 31, 2019 Form 10-Q. Stachel Aff. Ex. 6.

[36] Stachel Aff. Exs. 4, 7.

[37] *Id.*

[38] Stachel Aff. Ex. 4; *see also* Friedlander Aff. Ex. D (stock award agreement).

[39] Stachel Aff. Ex. 7.

[40] Friedlander Aff. Ex. F; *see also* Stachel Aff. Ex. 5.

[41] Friedlander Aff. Ex. F at 20.

[42] *Id.* at 20, 32; Compl. ¶ 258.

director."[43] As to Zoghbi, the proxy explained that his base salary had been reduced to $400,000 effective July 1, 2019, that he had received a one-time grant of 200,000 stock options, and that he was eligible to receive director compensation.[44]

Kraft Heinz's 2021, 2022, and 2023 proxy statements refer to Cahill as a "former consultant."[45] Cahill's compensation from service on the Board and certain committees of the Board is disclosed.[46] The 2023 proxy statement notes that Cahill "last provided consulting services to Kraft Heinz in June 2019," "received a grant of stock options in 2019 in connection with the termination of his consulting agreement," and was "determined to be independent effective August 17, 2022."[47]

### E. The Prior Action Complaint

On December 2, 2019, Erste served a books and records demand pursuant to 8 *Del. C.* § 220 on Kraft Heinz.[48] Kraft Heinz produced documents in response.[49] On January 21, 2020, Erste filed a derivative complaint in this court.[50] Erste sought

---

[43] Friedlander Aff. Ex. F at 32.

[44] Friedlander Aff. Ex. F at 20; *see also* Compl. ¶ 261.

[45] Friedlander Aff. Ex. G at 20; Friedlander Aff. Ex. H at 27; Friedlander Aff. Compl. Ex. I at 33; *see* Compl. ¶ 259.

[46] *See* Friedlander Aff. Ex. G at 36-38; Friedlander Aff. Ex. H at 40, 45.

[47] Friedlander Aff. Ex. I at 33; *see* Compl. ¶ 259; *see also* Friedlander Aff. Ex. I at 30 (describing Cahill as the "Independent Vice Chair" of the Board).

[48] Stachel Aff. Ex. 8 (Section 220 demand sent by Bragar Eagel & Squire, P.C.)

[49] *See* Compl., Preamble.

[50] C.A. No. 2020-0043-AGB (Dkt. 1) (Del. Ch.).

to assert derivative claims for breach of fiduciary duty regarding 3G's August 2018 sale of a portion of its stake in Kraft Heinz. Its complaint post-dated both Kraft Heinz's 2019 proxy statement and Form 4 filings about Cahill and Zoghbi's options.[51]

Erste's action was consolidated with another derivative action brought on July 30, 2019.[52] Erste was appointed co-lead plaintiff.[53] A consolidated amended complaint was filed in the Prior Action on April 27, 2020—after Kraft Heinz's 2020 proxy statement was filed.[54] It alleged that the defendants breached their fiduciary duties to Kraft Heinz in connection with the approval of 3G's stock sale, which was purportedly based on material non-public information.

## F.     The Prior Action Decision and Appeal

In June 2020, certain defendants moved to dismiss the Prior Action under Rule 23.1 for failure to plead demand futility and Rule 12(b)(6) for failure to state a claim.[55]

---

[51] *See supra* notes 33, 36-37 and accompanying text.

[52] *In re Kraft Heinz Co. Deriv. Litig.*, C.A. No. 2019-0587-LWW ("Prior Action"). Where appropriate, I take judicial notice of the filings in the Prior Action and the related appeal.

[53] Prior Action Dkt. 106.

[54] Prior Action Dkt. 117; *see supra* note 40 and accompanying text.

[55] Prior Action Dkt. 125; Prior Action Dkt. 124.

On December 15, 2021, this court issued a memorandum opinion dismissing the Prior Action with prejudice under Rule 23.1.[56] The opinion explained that the plaintiffs had failed to plead particularized facts creating a reasonable doubt that six of the eleven directors on Kraft Heinz's Board when the original complaint was filed were disinterested or lacked independence from 3G or its defendant partners. Those six directors are: Jeanne Jackson, John Pope, Feroz Dewan, Tracy Britt Cool, Abel, and Cahill.[57] Because those six constituted a majority of the Board, the court declined to address whether Zoghbi or Van Damme were disinterested and independent of 3G.[58]

Regarding Cahill, the plaintiffs had alleged that: "[U]ntil July 1, 2019, Cahill served as a consultant for [Kraft Heinz] and was paid an annual base salary of $500,000, in addition to annual Board fees of approximately $235,000, which together constituted more than half (52%) of Cahill's publicly reported income in 2018."[59] This allegation was insufficient to cast doubt on Cahill's independence

---

[56] *In re Kraft Heinz Co. Deriv. Litig.*, 2021 WL 6012632 (Del. Ch. Dec. 15, 2021), *aff'd*, 282 A.3d 1054 (Del. 2022) (TABLE).

[57] *Id.* at *5, *8.

[58] *Id.* at *13.

[59] The defendants' briefs in the Prior Action emphasized the plaintiffs' allegations about the termination of Cahill's consultancy agreement on July 1, 2019. The opening brief in support of their motion to dismiss stated: "Critically, the Complaint concedes that Mr. Cahill is not currently a Company consultant and thus fails to plead any existing arrangement that could somehow cause him to lack independence from 3G." Compl. ¶ 269.

12

from 3G. The opinion explained: "Cahill's consulting agreement with Kraft Heinz terminated on July 1, 2019—before this action was filed. There are no facts alleged indicating that Cahill expected his consulting arrangement to resume."[60] This court reasoned that, even if it were to find Cahill's past consulting and director fees material to him at the time, "it is not clear why they would create a sense of 'owingness' to 3G."[61]

The plaintiffs appealed the dismissal to the Delaware Supreme Court. They argued that the 2019 changes to Cahill and Zoghbi's compensation arrangements were made tactically with future derivative litigation in mind.[62] Based on public disclosures (including the August 2019 Form 4 filings), the plaintiffs argued:

- "The stock grants to Zoghbi and Cahill were disclosed in August 2019, and Zoghbi's new consulting agreement was entered into on September 6, 2019, suggesting that the economic arrangements for both individuals were being restructured in anticipation of the filing of derivative actions."[63]

- "[Kraft Heinz's] 2020 proxy statement describes the grant of stock options to Cahill '[i]n connection with the termination of his consulting agreement'[], but the Form 4 respecting the options was filed on August 20, 2019, and states that the 'transaction date' was August 16, 2019—after the termination of

---

Their reply brief also noted "Mr. Cahill's prior consulting arrangement with Kraft Heinz." *Id.*

[60] *Kraft Heinz*, 2021 WL 6012632, at *11.

[61] *Id.* at *12.

[62] Stachel Aff. Ex. 9 (Appellant's Reply Br.).

[63] *Id.* at 3.

13

the consulting agreement and after the filing of the first derivative complaint. . . ."[64]

- "As with Cahill, the timing of Zoghbi's new agreement [in 2019] suggests that KHC was trying to restructure his compensation in anticipation of derivative litigation, in the hope of defeating demand futility. . . . The 2020 proxy statement disclosed that Zoghbi received 200,000 stock options in connection with the new agreement reducing his compensation. . . . He received those 200,000 options on August 16, 2019, the same day that Cahill got 500,000 options."[65]

The appellate brief of Kraft Heinz and the individual defendants described Cahill as a "former consultant" with a "prior consulting arrangement."[66]

On August 1, 2022, the Delaware Supreme Court, sitting *en banc*, affirmed this court's decision on the basis of, and for the reasons stated in, the December 15, 2021 opinion.[67] The Prior Action was closed.[68]

## G. The Demand and Working Group Report

On November 29, 2022, Erste served a litigation demand on the Board.[69] The demand raised the allegations made in the Prior Action, including about 3G's stock

---

[64] *Id.* at 15 (quoting 2020 proxy statement and August 20, 2019 Form 4).

[65] *Id.* at 19 (citing 2020 proxy statement and August 20, 2019 Form 4).

[66] Compl. ¶ 271; *see* Friedlander Aff. Ex. K at 3, 25-27, 30-32.

[67] *In re Kraft Heinz Co. Deriv. Litig.*, 282 A.3d 1054 (Del. 2022) (TABLE).

[68] Prior Action Dkt. 178.

[69] Stachel Aff. Ex. 10.

14

sale. It also averred that certain 3G-affiliated defendants caused Kraft Heinz to "gift" Cahill "500,000 options after his consulting agreement was terminated."[70]

The Board tasked a Working Group of two independent directors with investigating the allegations in various related stockholder demands. The Working Group interviewed Cahill about, among other things, the rationale for granting him new stock options in 2019.[71] It issued a report on May 20, 2023 recommending that the Board reject the demands.[72] The report addressed the Working Group's investigation into, among other things, the grant of Cahill 500,000 stock options. It explains that the options were to compensate Cahill for "ongoing work for the Company that exceeded the role and scope of his service as director."[73]

The Board endorsed the Working Group's recommendation not to pursue litigation. Erste's counsel was notified of the Board's decision by letter dated May 30, 2023.[74]

On August 21, 2023, Erste served a books and records demand to investigate the rejection of its litigation demand.[75] On October 11, 2023, Kraft Heinz produced

---

[70] *Id.* at 6-7.

[71] Stachel Aff. Ex. 1.

[72] Compl. ¶¶ 253, 275.

[73] *Id.* ¶ 253; *see* Stachel Aff. Ex. 1 at 31-34.

[74] Stachel Aff. Ex. 11.

[75] Stachel Aff. Ex. 12.

various documents cited in the Working Group report, including Cahill's June 1, 2019 email and the minutes and presentation from the June 20, 2019 Compensation Committee meeting.[76]

### H.    This Litigation

After their litigation demands were rejected, several stockholders filed lawsuits in this court asserting wrongful refusal.[77]  Erste took a different approach. It sought instead to reopen this court's dismissal of the Prior Action.

On October 30, 2023, Erste attempted to file a Motion for Relief from Judgment Pursuant to Rule 60(b) in the Prior Action.[78]  The Prior Action, however, had been closed for over a year.  Erste proceeded to file the present suit as an "independent action, pursuant to Court of Chancery Rule 60(b)" to set aside the Prior Action.[79]

Erste's Complaint advances five claims—two of which are pertinent to this decision.[80]  Count I seeks relief from the dismissal of the Prior Action under Rule

---

[76] Compl. ¶ 277; Friedlander Aff. Ex. L.

[77] *See In re Kraft Heinz Demand Refused Deriv. S'holder Litig.*, 2024 WL 3493957 (Del. Ch. July 19, 2024) (dismissing the demand refused suits).

[78] Friedlander Aff. Ex. M.

[79] Compl., Preamble.

[80] The parties agreed to brief Counts I and II in the first instance, since the dismissal of those claims would be dispositive of the others.  Counts III, IV, and V include *Brophy* and aiding and abetting claims about 3G's August 2018 stock sale.

60(b) and for purported fraud on the court.[81] Count II is a claim for breach of fiduciary duty against certain director defendants for not "correcting" disclosures about Cahill and Zoghbi's compensation arrangements in Kraft Heinz's proxy statements.[82]

The defendants moved to dismiss the Complaint and filed opening briefs in support of their motions on March 4, 2024.[83] On April 23, the plaintiffs filed an answering brief in opposition to the defendants' motions to dismiss.[84] The defendants filed a reply brief in further support of their motions on May 17.[85] Oral argument was held on May 23 and the motions were taken under advisement.[86]

## II. ANALYSIS

Erste seeks to reopen this court's dismissal of the Prior Action under Rule 60(b). Rule 60(b) provides that relief from a judgment may be granted on the grounds of:

> (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud (whether heretofore denominated

---

[81] Compl. ¶ 286.

[82] *Id.* ¶ 293; *see also id.* ¶¶ 46-68.

[83] Opening Br. in Supp. of Defs.' Mots. to Dismiss the Verified S'holder Compl. Under Rules 12(b)(6), 60(b), and 23.1 (Dkt. 12) ("Defs.' Opening Br.").

[84] Pl. Erste Asset Mgmt. GmbH's Answering Br. in Opp'n to Defs.' Mots. to Dismiss the Verified S'holder Compl. (Dkt. 16) ("Pls.' Answering Br.").

[85] Reply Br. in Supp. of Defs.' Mots. to Dismiss the Verified S'holder Compl. Under Rules 12(b)(6), 60(b), and 23.1 (Dkt. 22).

[86] Dkts. 26, 28.

intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; [if] (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.[87]

The defendants oppose Erste's Rule 60(b) arguments in Count I and seek dismissal of Count II under Rule 12(b)(6).[88] Under Rule 12(b)(6), dismissal is only appropriate if the plaintiff would not be able to recover under any "reasonably conceivable set of circumstances [subject to] proof."[89] The court takes the facts alleged by the plaintiff as true and draws reasonable inferences from well-pleaded allegations.[90] Because the Rule 12(b)(6) motion is effectively the defendants' opposition to Erste's Rule 60(b) application, the standards and policies animating Rule 60(b) are pertinent to assessing whether Erste has stated a reasonably conceivable claim for relief.[91]

---

[87] Ct. Ch. R. 60(b).

[88] Defs.' Opening Br. 27-28.

[89] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002).

[90] *Id.*

[91] *See Franklin v. Glenhill Advisors, LLC*, 2023 WL 569192, *5 (Del. Ch. Jan. 27, 2023) (considering a Rule 12(b)(6) motion to dismiss an action under Rule 60(b) to be "effectively an opposition to [the plaintiff's] application for relief"), *aff'd*, 897 A.2d 162 (Del. 2006); *see also Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, 247 A.3d 229, 234 (Del. 2021) (describing the defendant's Rule 12(b)(6) motion as "its opposition to the Rule 60(b) arguments raised by" the plaintiff), *abrogated on other grounds by Willis v. State*, 302 A.3d 417 (Del. 2023).

## A. Rule 60(b) Arguments About Cahill

Count I of the Complaint is brought under Rule 60(b). Two "significant values" are "implicated" by that rule.[92] "The first is ensuring the integrity of the judicial process and the second, countervailing, consideration is the finality of judgments."[93] In furtherance of these principles, a Rule 60(b) application is "not to be taken lightly or easily granted."[94] It is not "an opportunity for a do-over or an appeal."[95] "[W]hether to grant a motion for relief pursuant to Rule 60(b) rests in the sound discretion of the trial court."[96]

Erste invokes two subsections of Rule 60(b). First, it contends that under Rule 60(b)(2), "newly discovered evidence" provides grounds to reopen the Prior Action.[97] Second, it invokes Rule 60(b)(3) and contends that "[t]he dismissal of the Prior Action was the product of fraud upon Erste and the Court respecting the consultancy status and compensation of Cahill."[98] Neither argument succeeds.

---

[92] *MCA, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 785 A.2d 625, 634-35 (Del. 2001) (citation omitted).

[93] *Id.*

[94] *Id.*

[95] *Carlyle Inv. Mgmt. L.L.C. v. Nat'l Indus. Grp. (Hldg.)*, 2012 WL 4847089, at *5 (Del. Ch. Oct. 11, 2012), *aff'd*, 67 A.3d 373 (Del. 2013).

[96] *Joseph v. Shell Oil Co.*, 1985 WL 21146, at *1 (Del. Ch. June 6, 1985).

[97] Compl. ¶ 286.

[98] *Id.*

1.     "Newly Discovered Evidence"

"Delaware law is clear that reopening a judgment based on new evidence is disfavored."[99]  To obtain relief under Rule 60(b)(2), Erste has the burden to show:

> (1) newly discovered evidence has come to its knowledge since the [dismissal]; (2) it could not, in the exercise of reasonable diligence, have been discovered for use [before dismissal]; (3) [the evidence] is so material and relevant that it probably will change the result if [relief] is granted; (4) it is not merely cumulative or impeaching in character; and (5) it is reasonably possible that the evidence will be produced [in the reopened suit].  The court also may examine additional equitable factors, including: (6) whether the moving party has made a timely motion; (7) whether undue prejudice will inure to the nonmoving party; and (8) considerations of judicial economy.[100]

Erste asserts that "newly discovered evidence" about Cahill's consulting arrangement and stock options satisfy this rule.  The evidence is four documents produced in response to Erste's 2023 Section 220 demand: (1) Cahill's June 2019 email to Abel proposing a new consulting arrangement; (2) the June 20, 2019 Compensation Committee presentation; (3) the June 20, 2019 Compensation Committee minutes; and (4) the Working Group report.[101]  According to Erste, without these documents, it could not have known that Cahill's consultancy

---

[99] *Okla. Firefighters Pension & Ret. Sys. v. Corbat*, 2018 WL 1254958, at *2 (Del. Ch. Mar. 12, 2018).

[100] *Vianix Del. LLC v. Nuance Commc'ns, Inc.*, 2011 WL 487588, at *4 (Del. Ch. Feb. 9, 2011).

[101] Pls.' Answering Br. 32-35; *see* Compl. Exs. A-C; Stachel Aff. Ex. 1.

20

continued after July 1, 2019. But Erste would have known about both Cahill's stock options and recut consulting arrangement had it exercised reasonable diligence.[102]

Kraft Heinz disclosed in August 2019 that Cahill had received an award of 500,000 options.[103] Erste would have known this by searching public sources.[104] Kraft Heinz also disclosed the options in its 2020 proxy statement, which preceded the filing of the Prior Action amended complaint.[105] But Erste waited until its appeal to raise arguments about Cahill's receipt of stock options, relying on the Form 4 and 2020 proxy statement for the first time.[106]

The fact that Cahill provided consulting services to Kraft Heinz on new terms was also knowable to Erste before the Prior Action was dismissed. Erste made a Section 220 demand in December 2019 for eleven categories of "Board Materials."[107] The Compensation Committee minutes and presentations are the sort

---

[102] *See Riker v. Teucrium Trading, LLC*, 2021 WL 1779317, at *3 (Del. Ch. May 3, 2021) (explaining that a party seeking relief under Rule 60(b)(2) must show that the "new" evidence "could not, in the exercise of reasonable diligence, have been discovered" prior to the judgment); *see also Wimbledon Fund LP v. SV Special Situations Fund LP*, 2011 WL 378827, at *5 n.32 (Del. Ch. Feb. 4, 2011) (collecting cases).

[103] Stachel Aff. Ex. 4.

[104] *See generally* U.S. Securities and Exchange Commission, https://sec.gov/search-filings ("Enjoy free public access to millions of informational documents filed by publicly traded companies and others in the SEC's Electronic Data Gathering, Analysis, and Retrieval (EDGAR) system.").

[105] *See supra* notes 40, 54 and accompanying text.

[106] *See supra* notes 62-65 and accompanying text.

[107] Stachel Aff. Ex. 8 at 8-10; *id.* at 8 n.1 (defining "Board Materials").

21

of documents routinely provided in response to Section 220 demands.[108]  But Erste

chose not to demand documents about directors' compensation or consulting

arrangements with Kraft Heinz.[109]  It cannot now claim that these Board-level

materials are "newly discovered evidence" when it failed to request them years

ago.[110]

### 2.  Fraud on the Court

A party seeking relief from a judgment under Rule 60(b)(3) for fraud on the

court "bears a heavy burden."[111]  It must adequately plead that the opposing party

committed fraud "prevent[ing] the moving party from fully and fairly presenting his

---

[108] *Okla. Firefighters Pension and Ret. Sys. v. Amazon.com, Inc.*, 2022 WL 1760618, at *12 (Del. Ch. June 1, 2002) (explaining that "[f]ormal board-level documents are often the beginning and end of a Section 220 production").  Most likely, Cahill's 2019 email would not have been produced in response to Erste's Section 220 demand.  But the information in that email (and the Working Group report) are cumulative.  The 2019 Compensation Committee materials would have allowed Erste to understand Cahill's new arrangement.

[109] Stachel Aff. Ex. 8 at 8-10.  Erste demanded, for example, "[d]ocuments reflecting any and all personal, familiar, financial, or business relationships, other than their service as directors of Kraft Heinz, between or among any members of the Board."  *Id.* at 10.  None of the categories requested can be read to include documents about compensation or consulting arrangements.

[110] *See In re U.S. Robotics Corp. S'holders Litig.*, 1999 WL 160154, at *11 (Del. Ch. Mar. 15, 1999) (denying motion for relief from judgment where the new evidence was not discovered by movant's counsel before trial because he pursued a different legal theory and observing that "[t]he only reason that class counsel did not discover [the evidence] is that they did not ask"); *Wimbledon Fund*, 2011 WL 378827, at *5 (denying a Rule 60(b)(2) motion where the party made a strategic decision to forego discovery prior to summary judgment and the filing of a Rule 56(f) affidavit).

[111] *MCA*, 785 A.2d at 639.

22

case."[112]  "[S]inister suspicions and dark imaginings of duplicitous conduct are not enough."[113]

The sort of fraud implicating Rule 60(b)(3) is narrow.  It is "confined to the more serious, but fortunately rare, cases involving a corruption of the judicial process itself."[114]  Delaware courts consider the distinction between "extrinsic fraud" that "affects the integrity and fairness of the judicial process itself" and "intrinsic fraud" that "can be discoverable through the ordinary processes and rules of the trial court."[115]  To justify relief under Rule 60(b)(3), the "fraud must be extrinsic."[116]  It must "directly affect[]" the "integrity of the court and its ability to function impartially."[117]

Erste alleges that the dismissal of the Prior Action "was the product of fraud upon [it] and the Court respecting the consult[ing] status and compensation of

---

[112] *Wilson v. Montague*, 19 A.3d 302 (Del. 2011) (TABLE) (emphasis omitted).

[113] *Chang v. Child.'s Advoc. Ctr. of Del., Inc.*, 2016 WL 3636539, at *1 (Del. Ch. June 29, 2016) (citation omitted).

[114] *Smith v. Williams*, 2007 WL 2193748, at *4 (Del. Super. July 27, 2007) (discussing precedent interpreting federal Rule 60(b)); *see also Postorivo v. AG Paintball Hldgs, Inc.*, 2008 WL 3876199, at *21 (Del. Ch. Aug. 20, 2008) (discussing the difference between extrinsic and intrinsic fraud as described in *Smith*); *Paron Cap. Mgmt., LLC v. Crombie*, 2012 WL 214777 (Del. Ch. Jan. 24, 2012) ("This Court has held that 'only extrinsic fraud will justify dismissal to remedy a fraud on the court, and only where established by clear and convincing evidence.'" (citation omitted)).

[115] *Smith*, 2007 WL 2193748, at *5.

[116] *Id.*

[117] *Id.* at *4.

23

Cahill."[118] The purported fraud is Kraft Heinz's public statements that Cahill was a "former consultant whose consulting agreement had been terminated."[119] The plaintiffs argue that these disclosures created a misimpression that Cahill's consulting relationship was in the past, which were relied upon by Erste, this court, and the Supreme Court in the Prior Action.[120]

Even if this were fraud, it is "intrinsic."[121] The relevant disclosures pre-date the April 27, 2020 amended complaint in the Prior Action. Erste does not raise "egregious conduct involving a corruption of the judicial process itself."[122] It does not cite anything approaching "bribery of a judge or juror, improper influence exerted on the court by an attorney, or involvement of an attorney as an officer of the court in the perpetration of fraud."[123] It merely challenges statements made in SEC filings—outside the judicial process. Erste can bring (and has brought) claims to remedy these alleged misstatements in SEC filings.

The only conduct Erste raises that is arguably linked to the judicial process is defense counsel's statements in the Prior Action. During oral argument on the

---

[118] Compl. ¶ 286.

[119] *Id.* ¶ 9.

[120] Pl.'s Answering Br. 41-42.

[121] *Postorivo*, 2008 WL 3876199, at *21.

[122] *MCA*, 785 A.2d at 639 (citation omitted).

[123] *Franklin*, 2023 WL 569192, at *10 (citation omitted).

24

motion to dismiss in the Prior Action, for example, counsel for Kraft Heinz represented that Cahill's consulting agreement terminated on July 1, 2019.[124] These statements were addressing allegations in the Prior Action complaint about Cahill's consultancy. Erste makes no well-pleaded allegation supporting a reasonable inference that counsel gave false information to this court. Its theory seems aimed at relitigating the Prior Action, which falls well short of what Rule 60(b)(3) requires.[125]

## B. Rule 60(b) Arguments About Zoghbi

Erste's arguments about Zoghbi are even weaker. They turn on the 2019 proxy statement, since Erste acknowledges that the 2020 proxy disclosed all relevant information about Zoghbi's compensation.[126] Erste could have obtained the June 2019 Compensation Committee materials with the exercise of reasonable diligence before filing its initial complaint in the Prior Action.[127] But even minimal diligence would have allowed it to raise the disclosures in the 2020 proxy statement before

---

[124] *See* Compl. ¶¶ 266-73 (quoting oral argument transcript).

[125] *See Wilson*, 2011 WL 1661561, at *3 (explaining that a Rule 60(b)(3) motion will be denied "if it is merely an attempt to relitigate the case" (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2860 (2d ed.))).

[126] *See supra* note 44 and accompanying text; Compl. ¶ 264 ("The 2020 Proxy disclosed the actual facts respecting Zoghbi's new compensation arrangements . . . .").

[127] *See supra* notes 107-10 and accompanying text.

dismissal. Erste's belief that it could rely on the 2019 proxy statement and ignore the subsequent year's filing cannot meet its high burden under Rule 60(b).[128]

Erste's Rule 60(b)(3) arguments also fail as they relate to Zoghbi. They (again) concern statements in SEC filings. The very same disclosures are the subject of Erste's breach of fiduciary duty claim in this action. No extrinsic fraud on the court is raised.[129]

Further, Erste cannot meet its "heavy burden" of showing that the information about Zoghbi's compensation would change the result in the Prior Action.[130] This court did not reach whether Zoghbi was conflicted for purposes of Rule 23.1 because a majority of the Board was deemed capable of considering a demand.[131] Since there is no reason to reopen Prior Action as it concerns Cahill, the court's holding that demand futility was not established remains unchanged.

\* \* \*

Erste's Rule 60(b) arguments are insufficient to overcome the crucial interest in maintaining the finality of judgments. A request for compensated-related

---

[128] Erste's position also ignores that the Form 4 about Zoghbi's options was publicly filed by August 20, 2019.

[129] *See supra* notes 114-17 and accompanying text (SMITH).

[130] *Wimbledon Fund*, 2011 WL 378827, at \*5 n.32; *see also Concord Steel, Inc. v. Wilm. Steel Processing Co., Inc.*, 2010 WL 3931097, at \*6-7 (Del. Ch. Oct. 7, 2010) (considering whether information would "be material or likely to affect the outcome of the trial" rather than "purely cumulative" information).

[131] *Kraft Heinz*, 2021 WL 6012632, at \*13.

26

documents in Erste's 2019 Section 220 demand or more comprehensive review of public filings would have allowed Erste to raise the pertinent facts before the Prior Action was dismissed. Indeed, Erste highlighted them before the Delaware Supreme Court on appeal. Erste was not deceived and this court was not defrauded.

Accordingly, I need not reach the other grounds for dismissal of Count I raised by the defendants.

## C. The "False Disclosures" Claim

In Count II of the Complaint, Erste alleges that five Kraft Heinz directors "knew that the 2019 Proxy falsely and misleadingly described the changes to the compensation arrangements of Cahill and Zoghbi, and that subsequent proxy statements falsely described Cahill's ongoing consultant status."[132] It claims that these directors breached their fiduciary duties disloyally "never correcting" Kraft Heinz's 2019 2020 proxy statements.[133] As relief, it seeks payment of litigation costs it incurred "to escape the effect of the wrongful dismissal of the Prior Action based on fraudulent public disclosures."[134]

---

[132] Compl. ¶ 291. The claim is brought against Cahill, Zoghbi, Castro-Neves, Lemann, and Rashida La Lande. *Id.* ¶ 67. Erste argues that the claim includes Kraft Heinz's proxy statements from 2019 to 2023. Pl.'s Answering Br. 46.

[133] Compl. ¶ 292.

[134] *Id.* ¶ 293.

Erste disavows any breach of fiduciary duty claim for false and misleading disclosures seeking stockholder action.[135] It is not asserting that stockholders' economic or voting rights were impaired by disclosures. And it is seeking compensatory damages.[136] As such, Erste must plead the elements of reasonable reliance, causation, and resulting damages.[137] The Complaint makes no effort to do so.[138]

This pleading deficiency may well be because Count II is aimed at recovering the attorneys' fees and expenses Erste incurred due to its own litigation strategy. Erste chose to bring the complaint in the Prior Action based on documents procured in its Section 220 demand and public filings it reviewed. It opted not to seek books

---

[135] Pl.'s Answering Br. 47 ("Count II is not a duty of disclosure claim; it is a 'duty of loyalty [claim] for failure to tell the truth.'" (quoting *Dohmen v. Goodman*, 234 A.3d 1161, 11745 (Del. 2020))). Despite this argument, Erste cites case law concerning disclosures where stockholder action was sought. *Id.* at 47 n.7.

[136] *See* Compl. ¶ 293; Pls.' Answering Br. 47 (requesting "individual compensatory damages for needless costs incurred litigating demand futility"); *see also Dohmen*, 234 A.3d at 1168 ("[T]he per se damages rule presumes only nominal damages. It does not extend to compensatory damages.").

[137] *See Dohmen v*, 234 A.3d at 1172 (observing that if the defendant had a fiduciary duty of disclosure, the plaintiff would have to demonstrate "reliance and causation to recover the compensatory damages sought"); *see also Malone v. Brincat*, 722 A.2d 5, 12 (Del. 1998) (explaining that only breach of fiduciary duty claims "arising out of disclosure violations in connection with a request for stockholder action" are exempt from pleading "the elements of reliance, causation and actual quantifiable monetary damages").

[138] Erste's answering brief also makes no attempt to argue that it has pleaded these elements. *See Emerald P'rs v. Berlin*, 2003 WL 21003437, at *43 (Del. Ch. Apr. 28, 2003) ("Issues not briefed are deemed waived."), *aff'd*, 840 A.2d 641 (Del. 2003).

and records about compensation or to review relevant Kraft Heinz public statements (such as the Form 4 filings). It also neglected to review the 2020 proxy statement, which would have allowed it to raise Cahill's receipt of options and Zoghbi's changed compensation in its amended complaint. Erste waited to debut its disclosure-related theory on appeal.

On these facts, I cannot reasonably infer that the director defendants "knew" false statements were being used to "create a false [litigation] record."[139] Nor can I infer that Erste has brought a claim on which it can conceivably recover its attorneys' fees. Count II is dismissed.

## III.  CONCLUSION

Count I fails to demonstrate that relief is warranted under Rule 60(b). Count II fails to state a claim on which relief can be granted. The Complaint is dismissed in its entirety with prejudice under Rule 12(b)(6).

---

[139] Compl. ¶ 292.